DAVID I. DALBY (SBN 114750)
ddalby@hinshawlaw.com
HINSHAW & CULBERTSON LLP
One California Street, 18th Floor
San Francisco, CA 94111
Telephone: 415-362-6000
Facsimile: 415-834-9070

Attorneys for Defendant
NORTHLAND GROUP, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOGERT ABRANTES, et al.,<br><br>Plaintiff,<br><br>vs.<br><br>NORTHLAND GROUP, INC.,<br><br>Defendant. | Case No. 14-cv-05311-YGR<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY ON PRIMARY JURISDICTION GROUNDS**<br><br>**Date**: April 14, 2015<br>**Time**: 2:00 p.m.<br>**Place**: Courtroom 1<br>**Judge**: Hon. Yvonne Gonzalez Rogers<br><br>Complaint Filed: December 3, 2014 |

## INTRODUCTION

In its opening brief, Northland Group, Inc. ("Northland") demonstrated that this Court should stay this action under the primary jurisdiction doctrine pending resolution of the United Healthcare Petition, Ex. 1 to Comcast's Request for Judicial Notice ("Northland's RFJN"), and the ACA Petition, Ex. 2 to Northland's RFJN. As set forth in Northland's moving papers, those Petitions currently are pending before the FCC and seek resolution of the threshold legal issue in this case – whether there is liability under the Telephone Consumer Protection Act ("TCPA") for non-telemarketing autodialed or prerecorded calls placed to "reassigned" or "wrong" wireless numbers. In response, Plaintiff does not dispute that this action involves precisely the same issue presented by the pending Petitions. *See* Pl. Opp. at 2. Nor, for that matter, does Plaintiff dispute that the factors

warranting a stay under the primary jurisdiction doctrine are met here. Rather, Plaintiff opposes that stay based on authorities that are not binding on this Court and supposed prejudice Plaintiff claims as a consequence of a stay. *See id.* at 2-5. However, as discussed below, Plaintiff's arguments ignore the scope of the United Healthcare Petition and the ACA Petitions and are otherwise based on unfounded and irrelevant assumptions regarding the pace of the FCC's ruling and the immediate impact a ruling would have in this litigation.

Plaintiff's arguments in opposition to the instant motion demonstrate and exemplify the inconsistencies and problems plaguing the courts when it comes to TCPA claims. While some of the issues presented in this case may have been concidered upon in the past, the imperative point is that technology and the way people communicate today has drastically changed. Therefore, Plaintiff is incorrect in his contention that the law is settled and unlikely to be re-addressed. In contrast to Plaintiff's contentions, the pending FCC petitions *do* in fact raise issues of first impression as the deficiencies in the law are of first impression given the nature of communications and usage of cellular telephones in the current day. Plaintiff states that the "likelihood that the FCC will act upon these issues is remote at best." However, that contention flies in the face of the many courts within this District and elsewhere that have held otherwise.

Moreover, even the United States Congress has recently written to the FCC stating that there is a "significant hindrance to public and private business practices across our great nation due to outdated federal law." (Correspondence from fifteen members of the U.S. Congress to FCC Chairman, Honorable Tom Wheeler, Aug. 1, 2014, attached hereto as Exhibit A). This correspondence explains the problems arising from the outdated application of the TCPA to phone calls today stating:

> Today, this law is being unfairly applied with great unintended consequences to calls that the [FCC] has deemed informational, not solicitation or telemarketing. The use of modern technology . . is an essential tool for efficiency in contacting consumers, and allows for better compliance with other regulations . . . Inadvertently, the TCPA

> has turned a vehicle to protect consumers from unwanted random solicitations into a booming practice for opportunistic attorneys to take advantage of ambiguous rules and profit personally by receiving millions of dollars by suing businesses and overburdening the courts while providing only nominal relief to their clients. I urge the FCC to act on ACA International's petition to modernize the TCPA by enacting common-sense reforms . . . The world has changed significantly since 1991 and its time for the FCC to clarify and modernize its TCPA rules to reflect the realties of today.

(Ex. A). As this Court and others in this District have recognized, there is every indication that the FCC will address the issues raised in the pending petitions which could significantly affect the issues raised in this case. *See Brown, et. al. v. DirecTV, LLC,* Order , 13-1170, Dkt #198 (C.D. Cal. Dec., 11, 2014)*Barrera v. Comcast Holdings Corp.,* 14-0343, 2014 WL 1942829 (N.D. Cal. May 12, 2014); *Heinrichs v. Wells Fargo Bank, N.A.,* 13-5434, 2014 WL 2142457 (N.D. Cal. Apr. 15, 2014). As such, Defendant requests this Court join the many others within this District and elsewhere that have granted stays pending the FCC's guidance.

## ARGUMENT

Plaintiff contends throughout his opposition that the issues raised in this case have already been ruled upon by the courts and the FCC through its prior rulemaking orders and declaratory rulings. To the contrary, the FCC has never explicitly ruled that the TCPA applies to debt collectors; but rather, it has only ruled that the TCPA can apply to non-telemarketing calls. Additionally, the ACA International and United Healthcare Services Inc. Petitions additionally raise the issue of wrong party calls which has not been directly addressed before. Moreover, regardless of prior rulings, the upcoming FCC declarations may significantly impact, revise, and alter prior outdated rulings. Finally, Plaintiff's claims that the FCC's rulings on the pending petitions would not apply retroactively has no basis in law or fact because mere clarifications of existing law apply retroactively.

### I. The Primary Jurisdiction Doctrine Mandates a Stay be Entered in this Case.

Plaintiff claims that the primary jurisdiction doctrine does not apply here because the issues

presented here do not require the FCC's expertise and because courts have previously ruled on issues of the meaning of "called party." This misses the point. It is not that courts are unable to interpret the meaning of the TCPA's ambiguities because, as Plaintiff points out, courts have previously examined the term "called party." Rather, the point is that the FCC is on the verge of providing clarity on the meaning of "called party" in the context of modern technology. Therefore, the FCC should be given deference at this juncture to foster consistent rulings within the courts. Plaintiff cites cases in which different courts have addressed the complexities of defining "called party" under the TCPA and Plaintiff's opposition demonstrates the extensive and varying analyses of defining "called party." This only further emphasizes the need to await the FCC's imminent clarification on this ambiguous subject.

Despite its length and density, plaintiff's opposition brief asserts irrelevant unfounded arguments and is squarely contrary to the current trend in the Ninth Circuit of granting motions to stay in view of the United Health Care and ACA petitions to the FCC. As summarized at the opposition , page 2, the allegations of plaintiff's complaint are identical to those before the FCC petitioned by United Health Care and ACA. Congress has placed the interpretation and enforcement of the TCPA's provisions within the primary jurisdiction of the FCC, *see id.* at 4, and a stay of this case would promote uniformity in the administration of the TCPA because the very same issue presented in this case – whether there is liability under the TCPA for calls and, specifically, non-telemarketing calls, placed to "reassigned" or "wrong" numbers – is already under submission before the FCC in two pending petitions. *See id.* at 4; *see also Swearingen v. Santa Cruz Natural Inc.*, No. 13-04291, 2014 WL 1339775, at *3-4 (N.D. Cal. Apr. 2, 2014) (dismissing action pursuant to the primary jurisdiction doctrine because a food labeling term disputed in the litigation is under "active consideration by the FDA" and noting that "courts find it particularly appropriate to defer to an agency when . . . the agency is in the process of making a determination on a key issue in the litigation" (citations omitted); *Swearingan v. Yucaton Foods, L.P.* ___F.Supp 2d ___ (2014) (dismissing action without prejudice based on primary jurisdiction of the FDA; *Thomas v. Costco Wholesale Corporation*, 2014 WL 5872808, at *5 (N.D. Cal. Nov. 12, 2014) (trend in the district, given reopening of FDA comment period, is to say claims under the primary jurisdiction doctrine).

**A. The Issue of How Or Whether The TCPA Applies to Wrong Party Calls Has Never Been Addressed by the FCC.**

Plaintiff's reliance on an FCC Ruling from 1999 to argue that the issue of prior express consent, as applied to recycled cellular phone numbers, has already been addressed is misplaced. (Dkt. #28, pp. 14-15). *In The Matter of Consumer.Net v. AT&T Corp.*, 15 F.C.C.R. 281 (1999), dates back sixteen years and addresses the application of the TCPA's "do-not-call" provisions. The analogy Plaintiff attempts to make between that ruling and the issues presented here is baseless. The 1999 ruling is not applicable to the growing problem of potential TCPA liability when a consumer provides consent and then later recycles his cellular phone number. Consequently, Plaintiff's reliance on this ruling should be rejected.

Plaintiff goes on to state that "it is speculative for Defendant to believe that the FCC would rule on pending petitions in a matter that . . . exempts Defendant from liability for calls to . . . 'recycled' telephone number." Plaintiff is correct. Defendant does speculate that the FCC rulings will exempt Defendant from liability under these circumstances. That is the entire point. The pending petitions portend a ruling that *could* allow for no liability under the facts presented here. That is exactly why a stay is warranted. Neither Plaintiff nor Defendant can say with certainty *how* the FCC will rule on the pending petitions; all the parties know is that it *will* rule in the near future.

**B. The Law is Unsettled as to Whether the TCPA Applies to Calls Made for Debt Collections, and Thus, the Issue is One of First Impression for the FCC**

Plaintiff's reliance upon a 2012 FCC order in support of his argument that the FCC has held that the TCPA applies to non-telemarketing phone calls is also misplaced. (Dkt. #28, p. 24). Despite Plaintiff's contention, the FCC has never specifically held that the TCPA applies to debt collectors.

Plaintiff cites to *Rules and Regulation Implementing the Telephone Consumer Protection Act of 1991*, 27 FCC Rcd. 1830 (FCC Feb. 15 2012)("2012 TCPA Order"), in arguing that the FCC has ruled that debt collection calls are subject to the TCPA. (Dkt. #28, p. 24). However, this order did

not address whether the TCPA applies to non-telemarketing calls; rather, the 2012 Order plainly states:

> Specifically, in this Order, we: (1) revise our rules to require prior express written consent for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines and accordingly eliminate the established business relationship exemption for such calls to residential lines while maintaining flexibility in the form of consent needed for purely informational calls; (2) adopt rules applicable to all prerecorded telemarketing calls that allow consumers to opt out of future robocalls during a robocall; and (3) revise our rules to limit permissible abandoned calls on a per-calling campaign basis, in order to discourage intrusive calling campaigns.

*See* 2012 TCPA Order at ¶2. The issues resolved in the 2012 Order do not specifically address whether Congress intended the TCPA to apply to debt collection calls. The FCC is currently reviewing this very issue.

Moreover, a number of courts nationwide have ruled that "debt collection calls fall under the commercial calls exception" to the TCPA, even when a collector calls a cellular phone, and thus are not actionable. *See Franasiak v. Palisades Collection Inc.,* 822 F.Supp.2d 320 (W.D.N.Y. 2011); *Martinez v. Johnson*, No. 2:11-157, 2013 WL 1031363, *13-14 (D. Utah Mar. 14, 2013); *Meadows v. Franklin Collection Service, Inc.,* 414 Fed.Appx. 230, 236, (11th Cir.2011); *Santino v. NCO Fin. Svcs., Inc.,* No. 09-982, 20ll WL 754874 (W.D.N.Y. Feb. 24, 2011); *Gray v. Wittstadt Title & Escro Co., LLC,* No. 11-111, 2011 WL 6139521, *4 (E.D. Va. Nov. 28, 2011).

Plaintiff cites a string of cases asserting that the opposite is true and that courts have explicitly ruled that the TCPA applies to debt collection calls. (Dkt. #28, pp. 24-25). First and foremost, the clear trend in this district and its sister districts is to stay these cases. Second, Plaintiff's reliance on his cited cases is misplaced and overstated. For instance, in *Robinson v. Midland Funding, LLC,* and *Tovar v. Midland Credit Mgmt.,* two identical opinions, the court denied the defendant's motion to stay because the pending issues before FCC were not on point to the cases at hand. No. 10CV2261 MMA AJB, 2011 WL 1434919 (S.D. Cal. Apr. 13, 2011); No. 10CV2600 MMA MDD, 2011 WL 1431988, at *3 (S.D. Cal. Apr. 13, 2011). That is starkly different than the instant case because the currently pending petitions, which the FCC has stated it will address and rule upon, are directly on point to the issues presented here. Moreover, in *Gager v. Dell Fin. Svcs.,*